# THE DISTRICT OF COLUMBIA

· *v*,

# ARMES.

---

CONSTITUTIONAL LAW; HIGHWAY EXTENSION ACT; CONDEMNA-
TION OF LAND.

1. So much of section 11 of the act of Congress of March 2, 1893
   (27 Stat. 532), providing for extension of the streets and high-
   ways of this District outside of the cities of Washington and
   Georgetown, as provides that where one part of a tract of land
   is taken for highway purposes, any benefits found to accrue to
   the remainder of the tract shall be taken into consideration in
   estimating the compensation to be made for the land actually
   taken, is unconstitutional and void. The just compensation
   required by the Fifth Amendment of the Constitution, to be paid
   owners of private property taken for public use, means the
   actual value of the property taken, payable in money and with-
   out diminution on account of benefits, general or special; *fol-
   lowing Railroad Company* v. *Hiller, ante,* page 289.

2. Assessments for special benefits accruing to land owners by the
   opening of a highway, may be made in aid of such improve-
   ment; and section 15 of the act of March 2, 1893, directing for
   such assessment, provides a legal and just method for levying
   the same.

3. But section 15 of that act is inoperative and void for the reason
   that, while it provides that one-half of the amount awarded as
   damages for each highway or reservation or part thereof con-
   demned and established, shall be assessed against the land
   benefited thereby, it fails to define or prescribe the district or
   territory within which the benefits may be assessed, and in that
   respect fails to conform to the necessary operations of sections
   6 and 7 of the act.

4. Section 15 of that act is also defective, inasmuch as the assess-
   ments provided for when confirmed by the Supreme Court of
   the District of Columbia, shall bear interest from the date of
   the confirmation, notwithstanding the fact that Congress may
   not accept them,-if at all, for a year, possibly, under the pro-
   visions of section 18 of the act.

5. That Congress made no appropriation for the immediate payment
   of the compensation provided for by the act does not render
   the act invalid, inasmuch as it is provided that in case it is not

made "within the period of six months, Congress, being in session for that time after such award, or for the period of six months after the meeting of the next session of Congress, the proceedings shall be void," etc.

6. The invalidity of a part of section 11 and of the whole of section 15 of that act does not render the whole act inoperative and void.

7. The recording of the maps provided for by that act, showing the plan of highway extension, decided upon by the Highway Extension Commission, does not amount to a taking of the land condemned, in the sense that it interferes with the enjoyment thereof by the owners to an injurious extent, beyond the power of Congress, without a provision for compensation.

No. 552.   Submitted March 26, 1896.   Decided April 23, 1896.

HEARING on an appeal from a judgment in condemnation proceedings instituted under the act of Congress of March 2, 1893, providing for a system of highway extension in the District of Columbia outside the limits of the cities of Washington and Georgetown.   *Reversed.*

The COURT in its opinion stated the case as follows :

This is an appeal from a judgment in a condemnation proceeding, instituted by the District of Columbia under the provisions of the act to provide a permanent system of highways in that part of the District of Columbia lying outside of cities, approved March 2, 1893.

Before August 27, 1888, there was no law regulating the subdivision of lands outside of Washington and Georgetown, into blocks, lots, streets, etc.   Many such were made, however, from time to time, and maps thereof admitted to record.   On that day, an act of Congress was approved which authorized the District Commissioners to make and publish regulations concerning such subdivisions, and prohibited the record of any plat thereof without the order of said commissioners endorsed thereon.   The act, in the concluding section, prohibited the record of a plat "unless made in conformity with the general plan of the city of Washington."   Some subdivisions were made under this act also.

The act of March 2, 1893, under the title aforesaid, undertook to provide a complete plan for a permanent system of highways throughout the whole of the District outside the boundaries of Washington and Georgetown. This was to be made as nearly in conformity with the street plan of the city of Washington as the commissioners of the District might deem advisable and practicable. The plans were required to be prepared in sections of such area as the commissioners might deem necessary, covering, first, such existing subdivisions as are not in conformity with the plan of the city of Washington. The plans were required to adopt and conform to any existing subdivisions made under the act aforesaid of August 27, 1888.

The map of each section, so determined upon by the commissioners, was required to be delivered to a commission, consisting of the Secretary of War, the Secretary of the Interior, and the Chief of Engineers, who were authorized to adopt the same, or make a new one. The map, when finally adopted, was to be recorded, and the record of further subdivisions of any land included therein was prohibited. After the record of the map it was made unlawful for the District to improve, repair, or assume any responsibility in regard to any abandoned highway within the area embraced in said map, or to accept, improve, repair or assume any responsibility in regard to any highway that any land owner in such area should thereafter attempt to lay out or establish, unless the same, having first been submitted to the commissioners and found to be in conformity with the map, shall have been approved by them and duly recorded. All land owners were permitted to adopt the subdivisions of their lands so made, by deed or will, and such adoption was given all the effect of a plat or map made and recorded by them. The commissioners were authorized to name all streets, avenues and reservations shown on the maps.

Wherever the maps so made and recorded shall alter or dispense with any highway, in their existing subdivisions,

the commissioners are required, within thirty days after record of such map or maps, to file a petition in the Supreme Court of the District praying the condemnation of all highways and reservations indicated on said map, that had not already been dedicated, etc.

In respect of highways, etc., outside of existing subdivisions, the commissioners are empowered to institute condemnation proceedings where, "in their judgment, the public convenience shall require the opening of the same, or any part thereof." But the question whether the public convenience does in fact require such opening must also be passed on by the court, and if found in the negative the proceeding must be dismissed.

Ample provision is made for the manner of conducting the condemnation proceedings with notice and formal trial before the court and a special jury of seven disinterested men who shall not be in the employ of the District or of the United States. The sections of special importance in the consideration of this case are 11 and 15, which read as follows:

"Sec. 11. That where the use of a part only of any parcel or tract of land shall be condemned in such a proceeding, the jury in assessing the damages therefor shall take into consideration the benefit the purpose for which it is taken may be to the owner or owners of such tract or parcel by enhancing the value of the remainder of the same, and shall give their verdict accordingly, and the court may require in such case that the damages and the benefits shall be found and stated separately."

"Sec. 15. That the amount awarded by said court as damages for each highway or reservation, or part thereof, condemned and established under this act, shall be one-half assessed against the land benefited thereby and the other half shall be charged up to the revenues of the District of Columbia; that one-half of the amount awarded by said court as damages for each highway or reservation, or part thereof, condemned and established under this act,

shall be charged upon the lands benefited by the laying out
and opening of such highway or reservation, or part thereof,
and the remainder of said amount shall be charged to the
revenues of the District of Columbia.  The same jury which
shall assess the damages caused by the opening of any
highways or reservation, or part thereof, or by the abandon-
ment of an existing highway, or part thereof, shall ascer-
tain and determine what property is thereby benefited, and
shall assess against each parcel which it shall find to be so
benefited its proper proportional part of the whole of said
one-half of the damages :   *Provided,* That in making such
assessment for benefits the jury shall, as to any tract a part
of which shall have been taken for such highway or reserva-
tion, or part thereof, make due allowance for the amount,
if any, which shall have been deducted from the value of
the part taken on account of the benefit to the remainder of
the tract.  The proceedings of the court and the jury in
making assessments for benefits under this section shall
conform as nearly as is practicable to the foregoing pro-
visions of this act relating to the assessment of damages,
and the verdict of the jury making an assessment under
this section as to any parcel of land shall not be conclusive
until the same shall have been confirmed by the court.
When confirmed by the court, the assessment so made
shall be a lien upon the land assessed, and shall be col-
lected as special improvement taxes in the District of
Columbia have been collected since February twenty-first,
eighteen hundred and seventy-one, and shall be payable in
five equal annual installments, with interest at the rate of
four per centum per annum from the date of the confirma-
tion of the assessment by the court.   That no expense for
the improvement of any street, circle, reservation or avenue
laid out under the provisions of this act, outside of the cities
of Washington and Georgetown, shall be chargeable to the
Treasury of the United States, but such expense shall be
paid solely out of the revenues of the District of Columbia."

The foregoing are followed by sections giving appeals,

with certain limitations, to the Court of Appeals, from all judgments that may be rendered ; and providing how the money shall be distributed among the claimants, etc. Section 18 provides that upon payment of the damages the commissioners shall have possession, and concludes with the following provision :

·" In case the court shall enter judgment of condemnation in any case, and appropriation is not made by Congress for the payment of such award within the period of six months, Congress being in session for that time after such award, or for the period of six months after the meeting of the next Congress, the proceedings shall be void, and the land shall revert to the owners."

The first map made, and known as section 1, was recorded August 31, 1895, and embraces forty-seven independent subdivisions that had been previously made, from time to time, by land owners. Within thirty days, as required by the law, petitions for condemnation were filed against the owners of lands in each of said subdivisions.

The proceeding in this case covers what is known as Denison and Leighton's subdivision of a part of Mount Pleasant and Pleasant Plains.

A jury was empaneled and returned a verdict in which they describe each lot, giving its area in square feet, the number of square feet taken for public use, and the value thereof, the value of buildings, etc., the damages, where any, to the remaining land, the benefits, where any, to the same, and concluding with the assessment of damages made in each case, less benefits.

Upon motions for new trial, in arrest, etc., based upon the unconstitutionality of the law, the learned justice before whom the proceeding was had, after delivering an able and comprehensive opinion, giving the reasons for his conclusion, declared the whole act void, set aside the verdict, and dismissed the petition. From that judgment the appeal has been prosecuted.

*Mr. S. T. Thomas,* Attorney for the District of Columbia ; *Mr. A. B. Duval,* Assistant Attorney ; *Mr. A. S. Worthington* and *Mr. Samuel Maddox,* special counsel, for the appellant:

I. *The deduction of benefits.*

(1). The proper construction of section 11 of the act of 1893.

The court below held that section 11 means that where part only of a tract is taken for a proposed highway the jury are required to deduct from the value of the part taken the benefit which may accrue to the owner on account of the increased value of the remainder of the tract *from the opening of the highway to public travel.* It is respectfully submitted that this is an erroneous view of the section in question.

There are two distinct classes of proceedings provided for in the act, one by section 6, which is for the immediate condemnation of land in subdivisions, and the other by section 7, which is for the opening of highways outside of existing subdivisions when actually needed. Section 11 applies to both classes of cases. The jury are instructed to take into consideration the benefit the purpose for which the land is taken may be to the owner. In the one class of cases, this purpose is the mere condemnation of the land and the establishment of a highway on paper. In the other, the purpose in view is, not only the taking of the land, but the actual opening of the street for public use. It is entirely unwarranted by anything in this section contained to hold that the purpose for which the land in this particular proceeding is taken is the opening and improvement of the streets to be condemned. The purpose is to acquire the land, so that when the time comes for opening the street it will be available for that purpose.

Even if section 11 should be construed to require the deduction of benefits from the probable opening in fact of the highways condemned, it is for the court to lay down

the rules governing such an inquiry; and if it should appear either to the trial court, or, on appeal, to this court, that the benefits claimed are so conjectural and uncertain as to be incapable of definite ascertainment, the jury would be instructed to find only nominal benefits.

(2). Section 11 is not unconstitutional, because it authorizes the deduction from the value of that part of a tract which is taken the benefit to the owner from the enhanced value of the remainder. It would be a vain task to undertake to collect the authorities in the State courts on this question of the deduction of benefits to the part of a tract not taken from the value of the part taken. All the principal text writers who have discussed this subject, except Mills in his work on Eminent Domain, agree that the more reasonable and better rule is that such deduction shall be made—and that the great weight of authority sustains this view. Lewis on Eminent Domain, sec. 471; Randolph on Eminent Domain, secs. 225 and 265 to 273; Cooley on Constitutional Limitations, pp. 697 to 703; 2nd Dillon on Municipal Corporations, sec. 624, 625.

On this general question of the deduction from the value of a part of a tract taken of benefits to the part not taken, we ask of the court careful consideration of the following cases, all of which will be found to be specially instructive: *Trinity College* v. *Hartford*, 32 Conn. 452; *Trosper* v. *Commissioners Saline Co.*, 27 Kan. 392; *Dougherty* v. *Brown*, 91 Mo. 26; *Newby* v. *Platte Co.*, 25 Mo. 258; *Genet* v. *City of Brooklyn*, 99 N. Y. 308; *Holden* v. *Milwaukee*, 31 Wis. 44; *Nichols* v. *Bridgeport*, 23 Conn. 189; *Commrs.* v. *O'Sullivan*, 17 Kan. 59.

II. *The assessment of benefits.*

(1). Section 15 of the act of March 2, 1893, is not void for uncertainty. In Cooley on Taxation, 448, it is said, in discussing the methods of apportionment of special assessments for local improvements, that there are two methods in common use—one an assessment by assessors or commissioners who are to make a levy in proportion to the ben-

efits according to their opinion, and the other an assessment by some definite standard fixed by the law itself, such as frontage, quantity or value, and the learned judge says, what seems to be very clear, that the former of these two methods is the most equal and the most just.   Judge Cooley goes on to say in the same connection that where benefits are assessed, the taxing district may be fixed in two different ways —one, by act of the legislature or ordinance of the municipal authorities, and the other, by assessors or commissioners to whose judgment the whole matter may be submitted.   In *Spencer* v. *Merchant*, 125 U. S. 356, the Supreme Court of the United States, while holding that if the legislature determines what land is benefited the courts cannot interfere, distinctly says that the legislature " may, if it sees fit, commit the ascertainment of either or both of these facts (the amount of the tax and the class of lands benefited) to the judgment of commissioners."   In *Lent* v. *Tillson*, 140 U. S. 319, and in *Paulsen* v. *Portland*, 149 U. S. 32, acts of State legislatures were sustained, by which, while the taxing district was fixed by the law, the principle upon which the apportionment of benefits among the several parcels of land in such district should be made was left to the commissioners.   See also *Doyle* v. *Austen*, 47 Cal. 353 ; *Bigelow* v. *Chicago*, 90 Ill. 52 ; *People* v. *Gilon*, 126 N. Y. 152 ; *Hoyt* v. *East Saginaw*, 19 Mich. 44 ; *Guild* v. *Chicago*, 82 Ill. 477 ; *Ferguson* v. *Stamford*, 60 Conn. 438 ; *Extension of Hancock Street*, 18 Pa. St. 27 ; *State* v. *Ramsey County*, 33 Minn. 310.   There is no ground for the contention that it was not competent for Congress in this case to authorize the appointment of a special tribunal to determine, in any proceeding under the act of March 2, 1893, both the taxing district and the rule of apportionment in making an assessment under section 15.   Such tribunals have various names —commissioners, assessors, viewers, &c.   The legislation now under consideration differs in one respect from most similar statutes, in that it not only authorizes the appointment of a tribunal which is to hear the parties interested

before deciding the questions submitted to them, but it requires the proceedings to be conducted in a court of justice, and gives the parties a right to a bill of exceptions and to a motion for a new trial and a direct right of appeal on such bill of exceptions to this court, and, where any constitutional question is involved, to the Supreme Court of the United States.

(2). Section 15 of the act of March 2, 1893, is not invalid because by that section Congress determines that there is property specially benefited to the extent of one-half of the damages. This proposition is not in conflict with the recent opinion of this court in the Rock Creek Park case. In that opinion, while the accepted theory as to these special assessments is criticised, it is conceded that by the great preponderance of judicial authority everywhere, and, in this jurisdiction, by the decision of the Supreme Court of the United States, such assessments are in general valid whenever the expense to meet which the assessment is levied is incurred in consequence of anything which may reasonably be considered of special value to the land in the vicinity. See *Spencer* v. *Merchant*, 125 U. S. 356-357 ; *Hagar* v. *Reclamation District*, 111 U. S. 705.

In *Willard* v. *Presbury*, 14 Wall. 680, and in *Mattingly* v. *District of Columbia*, 97 U. S. 692, the power of Congress to authorize street improvements in this District, to determine what property is benefited, and to assess the entire cost of the improvement or a part of that cost upon that property, was expressly upheld. See also *County of Mobile* v. *Kimball*, 102 U. S. 703, and for a clear exposition of the matter, *Ill. Cent. R. Co.* v. *Decatur*, 147 U. S. 190.

III. It does not follow that if section 11 of the act is unconstutional the whole act is void. This question could only arise in those cases in which there has been held to be a conflict between a constitutional provision providing for compensation and a statute which provides that in ascertaining that compensation benefits to the part of a tract not taken may be deducted from the value of the part taken.

And of such cases we have found ten. In only one of these did the court seem to think it necessary to even consider the proposition that because the benefits could not be deducted the whole act should be declared invalid. This exceptional case is *Brown* v. *Beatty*, 34 Miss. 241–247, and in that case the court expressly held that the rest of the act was valid and should be enforced. In the other nine cases the court seemed to take it for granted that the rest of the act was valid, and either remanded the case for further proceedings or took some other similar action indicating that the statute was to be enforced as though the clause relating to the deduction of benefits was not to be found therein. These cases are : *Isom* v. *Railroad Co.*, 36 Miss. 300–314; *Woodfolk* v. *Railroad Co.*, 2 Swan, 422; *Railroad Co.* v. *Stovall*, 12 Heisk. 1 ; *Atlanta* v. *Railroad Co.*, 53 Ga. 120–123 ; *Jacob* v. *Louisville*, 9 Dana, 114; *Railroad Co.* v. *Helm's Heirs*, 8 Bush, 681 ; *Railroad Co* v. *Ferris*, 26 Tex. 588 ; *Carpenter* v. *Demmings*, 77 Ill. 250 ; *Railroad Co.* v. *Dickerson*, 17 B. Mon. 173–180.

Even where part of an act is found to be invalid for any reason the rest of it will be enforced unless the good and bad parts are so connected together that the court can see that the legislature would not have enacted the law in the shape in which it is left when the invalid part is struck out. *Packet Co.* v. *Keokuk*, 95 U. S. 80–89; *Supervisors* v. *Stanley*, 105 U. S. 305–312 ; *Huntington* v. *Worthen*, 120 U. S. 97–102 ; *Field* v. *Clark*, 143 U. S. 649–695 ; *Reagan* v. *Trust Co.* 154 U. S. 362–395.

In no case where a public improvement is directed to be made and to be paid for, will the proceeding fail because in the same act there is a provision which cannot be enforced for an assessment upon private property to reimburse the whole or a part of the expense of the work. The doing of the work and the paying for it are one thing. The assessment is another and a different thing. They might well be, and frequently are, in different acts.

IV. The preparation and recording of the map of section

one is in no sense a taking of any of the land included therein. *District of City of Pittsburg,* 2 W. & S. 320; *Forbes Street,* 70 Pa. St. 125; *Furman Street,* 17 Wend. 650; *Foster* v. *Scott,* 136 N. Y. 575; *Moale* v. *Baltimore,* 5 Md. 322; *Steuart* v. *Baltimore,* 7 Md. 508; *Wagner* v. *Perry,* 47 Hun, 518; *In re Chestnut Street,* 118 Pa. St. 599; *Proser* v. *Railroad Co.,* 152 U. S. 63; *Shoemaker* v. *United States,* 147 U. S. 321.

V. *Other objections made to the act of March 2, 1893, not referred to in the opinion of Mr. Justice Cox.*

(1). The act is not void because it does not carry an appropriation for the payment of the damages when they shall be ascertained.    *Garrison* v. *New York,* 21 Wall. 204; *Ross* v. *Cemetery Co., ante, p.* 32.

(2). The provision found in section 2 of the act in question which directs that after any section map shall have been recorded the commissioners shall not improve, repair, or assume any responsibility in regard to any abandoned highway, is not invalid, nor if it is invalid, does it make the whole act void.

*Mr. W. L. Cole* and *Mr. C. H. Armes* for the appellees:

1. Where only part of a lot is taken for the purpose of a highway, the benefits which it is estimated will result to the part not taken cannot be considered as part of the compensation for the portion of the lot that is taken.

The rule which is regarded in many of the States as the fairest in dealing with the benefits and disadvantages is to allow benefits to be set off against damages only, but not against the value of the land actually taken. Mills Em. Dom., sec. 158. In many of the States the right to set off benefits is not allowed in any case whatever. The following are some of the leading cases holding this view:

*Jacob* v. *City of Louisville,* 9 Dana, 114; *Shirley* v. *B. & O. R. R. Co.,* 34 Md. 336; *Woodfolk* v. *Railroad Co.,* 2 Swan, 422; *Railroad Co.* v. *Wheelan,* 11 Neb. 585; *Rail-*

*road Co.* v. *Stoval*, 12 Heisk. 1 ; *Mitchell* v. *Thornton*, 21 Gratt. 164 ; *Railroad Co.* v. *Foreman*, 24 W. Va. 662 ; *Kostenbader* v. *Peirce*, 41 Iowa, 204 ; *Jones* v. *Willis Valley, etc.*, 30 Ga. 43 ; *Buffalo, etc., Co.* v. *Ferris*, 26 Texas, 588 ; *Isom* v. *Railroad Co.*, 36 Miss. 312 ; *Moale* v. *Mayor, &c.*, 5 Md. 314 ; *A. & F. R. R. Co.* v. *Burkett*, 42 Ala. 83. See also *Van Horn's Lessee* v. *Dorrance*, 2 Dallas, 304 ; *Navigation Co.* v. *United States*, 148 U. S. 312 ; *Cemetery Co.* v. *District of Columbia*, 5 App. D. C. 497.

What is just compensation within the meaning of the Constitution is a question to be determined by the court and not by Congress. Congress has no power to say to the court what is the measure of compensation, or what shall or shall not be considered in fixing that compensation. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312.

2. If, under some circumstances, special benefits can be deducted from the value of the land taken, the " benefits " mentioned in the eleventh section of this act are not such as can be lawfully deducted. The act which authorizes the taking of the land makes no provision for the opening of the street or the making of the other improvement, so that the owner of the land has no assurance that the benefit, if any, which is to result to him from the undertaking, will presently accrue.

3. The provisions of the fifteenth section of the act, which require one-half of the amount of the damages awarded by the court to be assessed against lands which the jury may consider to be benefited, are invalid for many reasons. The improvement proposed is not local in its character, but is a public improvement, not alone for the city of Washington, but for the whole District and the nation, and should be paid for by general taxation. The act creates no taxing district and does not define what lands will be benefited by the laying out and opening of the highways. One-half of the amount of damages awarded by the court is required arbitrarily to be apportioned by the

jury which assess the damages caused by the opening of said highways upon the lands benefited thereby, whether the amount so apportioned against a parcel of land be more or less than the benefit accruing to it or more or less than the value of the land itself. These assessments for supposed benefits from the laying out and opening of said highways are to be assessed presently and payment enforced, if necessary, by a sale of the land, while the opening of the highways is not provided for or assured, and may never be done.

*Mr. Nathaniel Wilson, Mr. Chapin Brown* and *Mr. A. H. O' Connor* for the appellees :

1. The filing and recording in the office of the surveyor of the District of the map given in evidence in this case, and the entry of a decree of condemnation, and for damages, in effect, and by reason of the statutory consequences resulting from the making and recording of the map, and the entry of such decree, constitute an actual taking of the lands of the respondents without compensation being made or provided therefor. *Pumpelly* v. *Green Bay Co.*, 13 Wall. 166 ; *State* v. *Hudson Co.*, 37 N. J. L. 12 ; *Pearsall* v. *Supervisors*, 74 Mich. 558 ; Elliott, Roads and Streets, 155, and cases cited ; *Bannon* v. *Rohmeiser*, 90 Ky. 48.

2. Congress has made no provision whatever, either by the act of March 2, 1893, or by any other legislation, for the payment of a just compensation, or of any compensation, for the land taken or to be taken for public use in pursuance of the provisions of the act, nor for the payment of any judgment or decree for damages that may be rendered in this or any proceeding instituted under the statute. The act is, therefore, void. *Sweet* v. *Rechel*, 159 U. S. 380.

3. It is not within the power of Congress to require that in determining what compensation is justly due for parts of lots or tracts of land taken or proposed to be taken for public use the supposed or estimated benefits to accrue to the remainder of such lots or tracts of land shall be de-

ducted from the money value of the land taken, and made a part of the compensation to the owner therefor ; nor is it competent for Congress to require that a fixed proportion or amount of the ascertained value of the lands taken or to be taken for public use under the terms of said act shall be assessed upon and collected from all lands which the jury shall consider to be benefited by the proposed condemnation and establishment of highways, and that each parcel found to be so benefited shall be charged with its proper proportional part of the whole of said one-half of the damages.

4. If it should be held that Congress has the constitutional power, under certain conditions of fact, to authorize and require the deduction of special benefits from the value of property taken, and the assessment of the value of general benefits on the land benefited but not taken, the contention on behalf of the respondents is that the benefits specified in the eleventh and fifteenth sections of the act are not, upon the facts existing in this case, of such a character as to authorize or justify any diminution of or deduction from the money value of property taken, or any assessment on property not taken. *Navigation Co.* v. *United States,* 148 U. S. 312 ; *District of Columbia* v. *Cemetery Co.,* 5 App. D. C. 497 ; *Craighill* v. *Van Riswick, ante,* p. 185.

5. If the eleventh and fifteenth sections of the act, or so much· thereof as provides for the set off and assessment of benefits, are held to be unconstitutional, the entire act is inoperative and void. The law and rule of construction applicable to such a condition of fact is well settled. *Pollock* v. *Farmers' Loan and Trust Co.,* 158 U. S. 636, and cases cited ; *Poindexter* v. *Greenhow,* 114 U. S. 270 ; *Spraigue* v. *Thompson,* 118 U. S. 90 ; *Warner* v. *Charlestown,* 2 Gray, 99 ; *Benedict* v. *Construction Co.,* 49 N. J. E. 42.

Mr. Justice SHEPARD delivered the opinion of the Court :

1. The first question for decision arises under the eleventh section of the act which provides the manner of the assessment of damages where a part only of the owner's tract shall be taken. The jury are therein directed, in assessing the damages for the part taken, to consider also the benefit that " the purpose for which it is taken " may be to the owner by enhancing the value of the remainder.

In the recent case of *Md. & W. R. R. Co.* v. *Hiller, ante,* p. 289, which was a case of the condemnation of land for the use of a private corporation, we were compelled to give interpretation to the last clause of the Fifth Amendment : " *Nor shall private property be taken for public use without just compensation.*" And the majority of the court were of the opinion that this "just compensation" means the actual value of the property taken, payable in money and without diminution on account of benefits general or special. In respect, however, of a claim for damages done to the adjacent land, not actually taken, special benefits are to be considered.

The same rule must necessarily apply where the appropriation is for the use of the Government. There is no ground for distinction. However, it must be admitted, as pointed out in the case before referred to, that there is, in some material respects, a difference between the effect of condemnation of land for a railroad and for a public highway or street. In the former, the use of the taker is practically exclusive, whilst in the latter case, the owner, as one of the public, has the enjoyment of all the uses of the thoroughfare, and has, besides, a special easement, or property, therein, for the subsequent deprivation of which, under certain circumstances, he may also be entitled to compensation. Whatever weight these considerations may be entitled to, they were not provided for in the Fifth Amendment as they have been in some of the later State constitutions ; and whilst Congress may liberalize or extend the

benefits of special compensation to the land owner, it cannot restrict the operation of the words of the Constitution intended for his protection.

The difference between the effect of taking for a *quasi* public and a distinctively public use, we venture to suggest, accounts for the doctrine of some of the decisions wherein, as it seems to us, the exercise of the sovereign power of taxation, that may include the assessment of special benefits to pay or assist in paying for streets and their improvement when taken, has been confounded with the separate and distinct right of eminent domain.

Both these powers are sought to be exercised in the statute under consideration. Section 15, which provides for the assessment of part of the cost of the land upon the property in the neighborhood receiving benefits from the opening of the street or streets, will be matter of special consideration later.

Section 11, which regulates the condemnation, provides that the value of the part taken from an owner may be reduced by the benefits which may accrue to his remaining land. Where these benefits are found to equal or to exceed the value of the part taken, there is nothing left for which to assess the neighboring lands under section 15. The whole burden falls upon the one land owner, notwithstanding the lands of others may receive benefits of the same kind to an equal or less extent. If the compensation, or "damages," as we think it is misnamed in the act, exceed the benefits, then the owner may be further assessed in proportion with others to make up the amount thereof, under the provisions of section 15. It is true that by special provision of that section the jury is required to make " due allowance for the amount, if any, which shall have been deducted from the value of the part taken on account of the benefit to the remainder of the tract." Exactly what this "due allowance" may mean is unimportant. In its broadest application it is eminently just; but it is given as an act of grace, and it is not the compulsory recognition of a right. If the

power to consider these benefits exists in the award of just compensation in the exercise of the right of eminent domain, it is dependent upon nothing else.

Payment of the surplus may be made from the public revenues, or in part from a fund provided by special assessments upon all neighboring lands that are benefited by the improvement, in the discretion of Congress. · This power of special assessment may be made to operate concurrently with the other, or it may follow it or be called into existence by a later independent act; and in case of its exercise, there would seem to be no way in which, save by legislative favor, the owner could secure exemption from double assessment.

Granting the power to assess the costs of the improvement against lands benefited thereby, then if the provision requiring credit to the owner of the land taken for benefits assessed against him under section 11 had been omitted therefrom, it could hardly be rendered invalid thereby.

The plea of double assessment would be met with the answer that the first one was made, not as an assessment of a tax, but under the separate and distinct provision of the Fifth Amendment, regulating compensation for lands taken for public use.

Had the power to assess and set off benefits been excluded from section 11, or had section 15 been amalgamated therewith and the owner of the land taken merely included with other neighboring land owners in an assessment, in proportion to benefits, for the purpose of raising a fund to aid in paying the cost of the improvement, the foregoing objection might probably have been obviated; because, whilst the two proceedings would be had together, the assessment and payment of compensation, on the one hand, and the assessment of the cost of the public improvement, on the other, would have been separate and distinct operations.

Referring to the case of *Md. & W. R. R. Co.* v. *Hiller*, *supra*, where the reasons for the interpretation given the

language of the Fifth Amendment limiting the exercise of the right of eminent domain are set forth, our conclusion is, that so much, at least, of section 11 as provides for the diminution of the just compensation for the value of the land taken to the extent of benefits accruing to the remainder, is beyond the power of Congress, and therefore void.

It does not follow, however, that the whole section shall be declared void and stricken from the bill because of the attempt to exercise a power that Congress does not possess; for, as if in recognition of a doubt as to its possession of such power, it is further provided that the assessments of value and of benefits should be separately made and returned by the jury. Although the word " *may* " is used in that provision, and not *must* or *shall*, we think the context authorizes it to be regarded as imperative rather than permissive only.

In *Md. & W. R. R. Co.* v. *Hiller, supra,* the trial court, without any direction upon the point in the law, required the jury to make a separate assessment ; and upon return of the verdict, ignored the assessment of benefits and entered judgment for the value as found; and that judgment we affirmed. We see no reason, therefore, why the remainder of the section may not stand, with the whole provision as to benefits stricken out. It is plainly severable therefrom. *Huntington* v. *Worthen,* 120 U. S. 97, 102.

2. Notwithstanding the criticism contained in the opinion of the majority of the court in the recent case of *Craighill* v. *Van Riswick, ante,* p. 185, of the doctrine that special assessments for benefits received may be made in aid of public improvements, it was conceded that it had been established by the great weight of judicial decision in this country, as well as recognized to exist by the Supreme Court of the United States.

· In that case, too, a marked difference was referred to as existing between assessments for the creation of public pleasure grounds and for the improvement of streets, building sewers, etc. As was said by Mr. Justice MORRIS :

" The theory has its limitations and restrictions, as has the power of general taxation ; and we think that it will be found, upon a closer analysis of the authorities, at all events of the best authorities upon the subject, that the theory has been applied only when some easement or appurtenance has been added to the lands of the person assessed, or when some advantage has been given him which he did not possess before, such generally as the improvement of a street for access to his property, or the construction of a sewer for the drainage of his land, or some similar work which he could, and should have done for himself, if it were not that such work by a private individual, for obvious reasons, would be impracticable."

Some of those special easements and rights of property in the streets, involved in this proceeding, have been mentioned heretofore.

In so far as the general principle of the assessment established by section 15 of this act is concerned, there can be no substantial objection.    It is fair, liberal and regular. One-half only of the cost, and that payable in five annual instalments, is to be assessed against the property found to be benefited by the improvement, in proportion to the benefits by each tract received.    The benefits are not apportioned by an arbitrary rule of frontage, area or neighborhood ; but are to be ascertained by a jury under the direction and supervision of a competent court, with the same right of appeal as in other cases.

Any mode of arriving at the assessment of benefits, however, must to a certain extent be arbitrary, uncertain and unequal in operation ; but these difficulties are inherent, and though furnishing strong reasons against the adoption of any such system of taxation, have not as yet been permitted to stand in its way.

The difficulty with section 15, in these respects, is not in the general principle of the assessment, but in giving it certain and effective operation in connection with other provisions of the act. For this reason, chiefly, the learned

justice who tried the case set aside the verdict and declared
the law inoperative and void.   As was said in his opinion :
" If we suppose a spacious avenue to be run through a half-
dozen subdivisions from the boundary of the city to the
boundary of the District, it is evident that the part of the
avenue nearest the city is just as certainly, though perhaps
not in the same degree, beneficial to the most remote as to
the nearest subdivision, because it is equally essential to it
and forms a part of its means of convenient access to the
city ; and the benefit of such a highway is not confined to
the ground immediately abutting upon it, but extends
laterally to all the property to which it adds a convenient
access to the city.   In fact it diffuses itself in every direc-
tion until it imperceptibly disappears like the ripples in a
stream caused by a stone thrown into it.   But if a jury are
to assess all the property so benefited they must first know
the whole amount of damages to be awarded for all the
property taken for the supposed highway in order that a
single assessment for benefits may be made.   In order to
do this it would be necessary for the same jury to assess
the damages in all the subdivisions affected by the highway
in question, and for all assessments to be suspended until
this work is completed."

The act does not contemplate the immediate opening up
of all the streets provided for in the map ; but that it shall
be done first in the old subdivisions separately, and then in
the outlying portions, from time to time.   Section 6 seems
to contemplate an immediate but separate proceeding to
condemn, against the property in each of the subdivisions,
and that course has been pursued by the commissioners.
Section 7, on the other hand, defers the condemnation of
streets and avenues in other portions of the District con-
tained in the map, and outside of existing subdivisions,
until such time as, in their judgment, public convenience
shall require, and this exercise of discretion is made subject
to review by the court.   These requirements seem to have
been ignored in section 15, which seems to contemplate an

award of benefits on all lands benefited by opening up any particular highway. So, as said by Mr. Justice Cox: "If the jury were to consider what property outside of the subdivision would be benefited by so much of the new highway as lies within that subdivision and assess it accordingly, another jury, in passing upon an adjacent subdivision might in return assess benefits anew upon the lots in this subdivision, and thus the assessment of different juries might overlap and be doubled upon the unfortunate lot holder." In the same way assessments might be further made to overlap in the later opening of a street to the District boundary.

The other sections of the act show that Congress regarded it as unwise to open a street to the District line sooner than the public convenience shall demand ; whereas, it was considered important to at once rectify the existing subdivisions and conform them to the general plan. These were partly built upon and would probably be further incumbered by improvements, with a probable rapid increase of values and consequential damages to be compensated for.

In our opinion, section 15 is inoperative by failure to conform to the necessary operation of sections 6 and 7. To accomplish the object of speedy condemnation and rectification of streets in localities where important, some provision should have been made for the creation of definite taxing districts, including one or several subdivisions and sections adjacent, where it might appear to be expedient and just, so that the work of condemnation, laying off, and assessment of expenses of streets could take place promptly without complication with others.

Another defect is that the assessments, when confirmed by the court, shall bear interest from date of such confirmation, notwithstanding the fact that Congress may not accept them, if at all, for a year, possibly, under the provisions of section 18.

3. That Congress has made no appropriation for the immediate payment of the compensation that may be assessed

does not render the act invalid. That it had the right to authorize the commissioners to withdraw, after judgment rendered in a similar proceeding where the money had been appropriated in advance, has been decided. *Ross* v. *United States, ex rel. Prospect Hill Cemetery, ante,* p. 32.'

Here no appropriation is made; but it is declared that in case it is not made "within the period of six months, Congress being in session for that time after such award, or for the period of six months after the meeting of the next session of Congress, the proceeding shall be void and the land shall revert to the owner."

The last words are meaningless, for the title cannot pass out of the owner until payment made or security provided for. *Sweet* v. *Rechel,* 159 U. S. 380, 401, 404. Besides, the first clause of the section prohibits the possession of the commissioners for the District until the appropriation shall have been made and the money actually paid.

It is a serious inconvenience, and may, in some instances, result in injury to the private owner, that he may have to remain in suspense awaiting the appropriation by Congress; but this is an incident of the exercise of the power that cannot be wholly avoided, and against which there is no remedy, provided it be not prolonged for an unreasonable period. *Shoemaker* v. *United States,* 147 U. S. 282, 321.

The same practical injury may follow the institution of proceedings by a private corporation as the result of protracted litigation; though, in such case, the land owner would probably have a right of action for actual damages against the corporation in the event of its withdrawal therefrom.

4. The next proposition urged in support of the judgment is, that if the invalidity of either of sections 11 and 15, or both, be established, the act, as a whole, becomes inoperative, and must therefore be declared void.

We cannot agree to this contention. The controlling object of the act evidently is to provide a uniform plan for the extension of the streets and avenues of the city of

Washington throughout the District of Columbia, and to rectify all existing subdivisions and bring them into conformity therewith.   *Ross* v. *Goodfellow,* 7 App. D. C. 1.

Even if the whole of section 11 had been declared void the general object of the act would not be impaired; though important to the public interest in giving immediate effect to the·operation of the act in the existing subdivisions, it might have been omitted along with its attendant provisions, without detriment to the general object to be accomplished.

What has·been said of section 11 applies with greater reason to section 15, which has been declared invalid.  That section might well have been omitted altogether.   It is but one of the modes in which the property condemned may be in part paid for.   If in fact the policy of assessing benefits in order to pay for the opening of streets is to be generally pursued, it would be more nearly just, as well as conducive to certainty of ascertainment, if the assessment should be made to follow upon the actual condemnation and opening of the street through a definite territory.

"It is only when different clauses of an act are so dependent upon each other that it is evident the legislature would not have enacted one of them without the other—as when the two things provided are necessary parts of one system— that the whole act will fall with the invalidity of one clause. When there is no such connection and dependency the act will stand, though different parts of it are rejected."   *Huntington* v. *Worthen,* 120 U. S. 102 ; *Packet Co.* v. *Keokuk,* 95 U. S. 80, 89 ; *Poindexter* v. *Greenhow,* 114 U. S. 270 ; *Reagan* v. *Farmers' L. & T. Co.,* 154 U. S. 362, 395.

5. The next and last objection taken to the act, as a whole, is that the record of the maps provided for therein amounts to a taking of the land, in the sense that it interferes with the enjoyment thereof by the owners to an injurious extent, beyond the power of Congress, without a provision for compensation.   This question, though not decided, was to some extent considered in *Ross* v. *Goodfellow, supra,* where some of the·probable inconveniences of the act were alluded to.

That the act is not an unauthorized encroachment upon the rights of the land owners is, we think, settled by the principles enounced by the Supreme Court of the United States in the following cases: *Shoemaker* v. *United States*, 147 U. S. 282, 321; *Prosser* v. *North. Pac. R. Co.*, 152 U. S. 59, 63, 65.

Similar statutes are quite common throughout the States of the Union, and have generally, if not universally, been upheld as valid exercises of legislative power. *District of City of Pittsburg*, 2 W. & S. 320; *Moale* v. *Baltimore*, 5 Md. 322; *Steuart* v. *Baltimore*, 7 Md. 508; *Foster* v. *Scott*, 136 N. Y. 575, 577.

The question whether the public necessity or interest intended to be subserved by the act so far exceeds its inconveniences to the individuals as to justify its enactment, was one for the determination of Congress.

Whilst we concur with the learned trial justice in his refusal to enter judgment in accordance with the verdict, we think that he went too far in declaring the whole act inoperative and void and dismissing the petition.

*The judgment will therefore be reversed, and the cause remanded, with direction to modify the judgment in so far as it dismisses the petition, and to reinstate the cause for further proceeding therein not inconsistent with this opinion. The costs incurred on this appeal by the parties respectively will be paid by them. It is so ordered.*

Mr. Chief Justice ALVEY filed an opinion dissenting in part from, and concurring in part with, the opinion of the majority of the court, as follows:

This proceeding was instituted under section 6 of the act of Congress of the 2d of March, 1893, entitled "An act to provide a permanent system of highways in that part of the District of Columbia lying outside of cities," for the purpose of having condemned permanent rights of way for the public over all the land lying within the limits of a certain ex-

isting subdivision in section 1 of the plan for the extension of a permanent system of highways in this District, as provided for and directed by said act.

The plan for extension of this section 1 has been made and recorded in pursuance of the statute; and proceedings for condemnation and assessments were instituted and carried on to the extent of the findings by the jury under the direction of the court.    But, at this stage of the proceeding, exceptions were taken to the proceedings, presenting questions as to the constitutionality of the statute, and as to the power of the court to proceed thereunder.    These exceptions were sustained by the court, and the entire statute, and all the proceedings had thereunder, were declared null and void, and the proceedings for condemnation and assessments were dismissed.

The grounds for this decision are supposed to be apparent in the eleventh and fifteenth sections of the statute. There is certainly no sufficient ground for contending that any of the other sections and provisions of the act are amenable to constitutional objection.   The most that can be urged against some of them is, that they may give rise to difficulties in their practical application.    But this grows out of the nature and peculiar circumstances of the subject-matter of the act, and not out of any constitutional prohibition applicable to the case.

Section 11 of the act provides "that where the use of a part only of any parcel or tract of land shall be condemned in such a proceeding, the jury in assessing the damages therefor shall take into consideration *the benefit the purpose for which it is taken may be to the owner or owners of such tract or parcel by enhancing the value of the remainder of the same*, and shall give their verdict accordingly, and the court may require in such case that the damages and the benefits shall be found and stated separately."

By section 15 it is provided, "that the amount awarded by said court as damages for each highway or reservation, or part thereof, condemned and established under this act,

*shall be one-half assessed against the land benefited thereby,* and the other half shall be charged up to the revenues of the District of Columbia; that one-half of the amount awarded by said court as damages for each highway or reservation, or part thereof, condemned and established under this act, shall be charged upon the lands benefited by the laying out and opening of such highway or reservation, or part thereof, and the remainder of said amount shall be charged to the revenues of the District of Columbia. The same jury which shall assess the damages caused by the opening of any highway or reservation, or part thereof, or by the abandonment of any existing highway, or part thereof, shall ascertain and determine what property is thereby benefited, and shall assess against *each parcel which it shall find to be so benefited its proper proportional part* of the whole of said one-half of the damages: *Provided,* that in making such assessments for benefits the jury shall, as to any tract a part of which shall have been taken for such highway or reservation, or part thereof, *make due allowance for the amount, if any, which shall have been deducted from the value of the part taken on account of the benefit to the remainder of the tract."* The section then provides, that when the assessment so made shall have been confirmed by the court, it *shall be a lien upon the land assessed,* and shall be collected as special improvement taxes in this District have been collected since February 21, 1871, and shall be payable in five equal annual instalments, with interest at the rate of four per cent. per annum from the date of the confirmation of the assessment by the court. This section further provides, that none of the expense for the improvements contemplated by the act " shall be chargeable to the Treasury of the United States, but such expense shall be paid solely out of the revenues of the District of Columbia." It is then provided, by section 16 of the act, " that when said court shall have assessed the damages to be paid as to any parcel of land, the use of which shall have been condemned, or which shall have been

injured by the abandonment of a previously existing high-
way, and there shall be no controversy as to the persons
who are entitled to receive the same or as to the distribu-
tion of the same among them, said court shall decree such
payment to be made, and upon presentation of a duly certi-
fied copy of such decree to the Treasurer of the United
States, he shall report the same to Congress for considera-
tion and action, and shall make such payment to the per-
son or persons appearing by such decree to be entitled
thereto, as Congress may provide." And by section 18 it
is provided, "that whenever any final decree shall have been
made by the court under the provisions of this act for the
payment of the damages to the parties, or into the registry
of the court, *and when the money has been appropriated and
paid,* the commissioners shall be entitled to take immediate
possession of the parcel of land in regard to which said
order of payment shall have been made, and the court shall
enforce such right of possession by proper order and by
process addressed to the marshal of the United States for
the District of Columbia. In case the court shall enter
judgment of condemnation in any case, and appropriation
is not made by Congress for the payment of such award
*within the period of six months,* Congress being in session
for that time after such award, or for the period of six
months after the meeting of the next session of Congress,
*the proceedings shall be void,* and the land shall revert to the
owners." That is to say, the condemnation proceedings
shall be void, and the land remain as if it had never been
condemned. The owner, therefore, is not to be, and, indeed,
could not be, deprived of his land until compensation there-
for is actually made, and if such compensation be not made
within the reasonable time fixed by the statute, the con-
demnation proceedings are to be treated as wholly without
effect.

1. The first question to be considered is, what will con-
stitute just compensation for private property taken for pub-
lic use, to gratify the requirement of the Fifth Amendment

to the Constitution of the United States ?   This question is
raised by the eleventh section of the act under considera-
tion, which provides that where the use of only a part of
any parcel or tract of land is taken for the improvement
proposed, the benefit, if any, that may accrue therefrom to
the remaining part, by which its value may be enhanced,
shall be taken into consideration and allowed for in esti-
mating the amount of just compensation for the part taken.
This would seem to be fair and just, and is certainly sup-
ported by the great preponderance of authority in this
country.   Indeed, this is conceded by the learned justice
below, upon the authority of Cooley on Constitutional Limi-
tations, page 700, and Dillon on Municipal Corporations,
sec. 625.   The property is taken for public use by virtue
of the power of the eminent domain ; and the question is,
whether the owner of the land taken can exact full compen-
sation therefor in money, *eo nomine*, irrespective of any and
all special benefits conferred upon the remaining part of the
tract or parcel of land left to him, by the use of the part
appropriated by the public ?

The learned justice below, while conceding the existence
of the general principle by which benefits may be assessed,
yet concluded that there was such difficulty in ascertaining
the benefits with certainty and precision, and such uncer-
tainty as to the time when such benefits would actually ac-
crue to the remaining parts, that the provision for assessing
such special benefits was null and void, and could not,
therefore, be enforced.   If this be the true construction, it
necessarily strikes from the act the entire section 11, and
leaves no provision for assessing special benefits as means
of compensation.   But I do not think such construction
ought to be adopted.   Every reasonable intendment should
be indulged in order to maintain the act in its entirety, and
if there be any reasonable mode of construction by which
the entire act, and every provision thereof, may be sus-
tained, as against a mere plausible construction tending to
a contrary result, the former mode of construction must

prevail.    It is only when no other reasonable construction
can be supported, that an act of Congress, or any part of
it, can be declared to be unconstitutional and void, or in-
valid for any cause.

It has been very earnestly and strongly argued by coun-
sel for the appellees that it is in contravention of the con-
stitutional rights of the parties to allow the special benefits
to the remaining parts of their lands to be taken into con-
sideration in estimating just compensation for the parts
taken ; and many authorities have been cited in support of
their contention.    But the great weight of authority is
against the contention ; and it is only in deference to the
arguments so earnestly pressed upon the court, that I think
it proper to refer to some of the most generally accepted
authorities upon the subject.

It is certainly true, as contended by counsel, that what
will constitute just compensation for the land taken is a
question for the courts, and not for the legislature, to de-
termine.    The constitutional requirement of just compen-
sation to be made, excludes the power to take into account,
as an element of such compensation, any supposed benefit
that the owner of the land may receive in common with the
other members of the same community, from the proposed
improvement; but he is entitled, as against the public for
whose use his property is taken, to receive a full and exact
equivalent for the land taken from him, and that is just
compensation.    It is, indeed, for the legislature to deter-
mine what private property may be needed, and when it
shall be taken for public use ; those being questions, as said
by the Supreme Court of the United States, of a political
and legislative character ; but when the taking is author-
ized, then the question of compensation is judicial.    "It
does not rest with the public, taking the property through
Congress or the legislature, to say what compensation shall
be paid, or even what shall be the rule of compensation.
The Constitution has declared that just compensation shall
be paid, and the ascertainment of that is a judical inquiry."
*Monongahela Nav. Co.* v. *United States,* 148 U. S. 327.

The principle by virtue of which the benefits and the injuries to the remaining part may be considered in estimating the just compensation for the part taken, is very clearly stated and illustrated by Mr. Justice Cooley, in his valuable work on Constitutional Limitations, at page 697, 6th edition.   He there says: " When, however, only a portion of a parcel of land is appropriated, just compensation may, perhaps, depend upon the effect which the appropriation may have on the owner's interest in the remainder, to increase or diminish its value, in consequence of the use to which that taken is to be devoted, or in consequence of the condition in which it may leave the remainder in respect to convenience of use.   If, for instance, a public way is laid out through a tract of land which before was not accessible, and if in consequence it is given a front, or two fronts, upon the street, which furnish valuable and marketable sites for building lots, it may be that the value of that which remains is made, in consequence of taking a part, vastly greater than the whole was before, and that the owner is benefited instead of damnified by the appropriation.   Indeed, the great majority of streets in cities and villages are dedicated to the public use by the owners of lands, without any other compensation or expectation of compensation than the increase in market value which is expected to be given to such lands thereby.; and this is very often the case with land for other public improvements, which are supposed to be of peculiar value to the locality in which they are made.   But where, on the other hand, a railroad is laid out across a man's premises, running between his house and his outbuildings, necessitating, perhaps, the removal of some of them, or upon such a grade as to render deep cuttings or high embankments necessary, and thereby greatly increasing the inconveniences attending the management and use of the land, as well as the risks of accidental injuries, it will often happen that the pecuniary loss which he would suffer by the appropriation of the right of way would greatly exceed the value of the land taken, and to

pay him that value only would be to make very inadequate compensation. It seems clear, therefore, that, in these cases, it is proper and just that the injuries suffered and the benefits received by the proprietor, as owner of the remaining portion of the land, should be taken into account in measuring the compensation. This, indeed, is generally conceded; but what injuries shall be allowed for, or what benefits estimated, is not always so apparent. The question, as we find it considered by the authorities, seems to be, not so much what the value is of that which is taken, but whether what remains is reduced in value by the appropriation, and if so, to what extent; in other words, what pecuniary injury the owner sustains by a part of his land being appropriated."

The same general doctrine, with ample illustrations, is laid down by Judge Dillon, in his work on Municipal Corporations, vol. 2, secs. 624 and 625; and the author there states the process by which to estimate the benefits or injuries to the remaining portion of the parcel or tract, and how such estimate may affect the question of just compensation for the part taken.

Such, then, being the general principle, founded in justice and fairness, and adopted and asserted by courts and jurists of the highest authority, it would seem to be clear that it is competent to Congress, in legislating for this District, to require the benefits, if benefits there really be, to the remaining parcel of land, where a part only of a tract is taken, to be taken into consideration in estimating the just compensation for the part taken for the improvement, as provided in section 11 of the act of 1893. Whether there be benefits of a nature to be considered, and to what extent, are questions of a judicial character, and are exclusively for the court.

But it is strongly objected, and this objection was sustained by the court below, that the statute, while it authorizes proceedings for condemnation of property required for the improvement, makes no provision for the immediate

opening and completion of the improvements from which benefits may be derived to the remaining parts of the tracts or parcels not appropriated.   In other words, the benefits authorized to be taken into account, in adjusting the measure of compensation for the parts taken, are too remote and uncertain to form an element in estimating the present value of the land taken ; that the owner of land to be affected by the proposed improvement should have all the certainty of benefit which the legislature can give ; and the court and jurors who are to estimate the damages should be able to ascertain with certainty when the work is to be done and the cost of it, so that they may easily estimate the benefit to accrue therefrom, and that there should be nothing left to conjecture or speculation.

This objection does not seem to be well founded, when all the provisions of the statute are taken into view. In construing this statute, we must bear in mind the great object and purpose intended to be accomplished.' The object to be accomplished is the extension of the present city limits, so as to conform to the original plan of the city of Washington, as projected by President Washington and those intrusted with the adoption of a plan and the laying out of the national city.   The plan, while originally confined to a limited portion of the territory ceded by the State of Maryland, yet contemplated the ultimate extension of the city to the limits of the cession, if that should be found necessary. This extension of the city limits is a work of large and extensive proportions, and cannot be accomplished all at once, or within any very short time, but must, in the nature of the work, be done gradually as the public needs may require the improvement.  Of this fact all land owners within the District must be taken to have knowledge.   The plan of extension is intended to subserve a great public object, indeed, necessity, and also to promote the private interests of property holders along the lines of improvement.   That some delay and inconvenience to adjoining proprietors may occur, are consequences that may reasonably be expected ;

but the plan of extension should not be defeated, because some persons may suffer inconvenience, or even be made to suffer some consequential loss by the improvement projected or constructed. The statute has carefully provided the means by which the rights of individuals shall be protected in assessing benefits and estimating just compensation under section 11. The question whether benefits are too remote and contingent to be made an element in estimating just compensation, must be decided according to settled principles of law ; and none that cannot be ascertained with reasonable certainty and precision will be assessed. Remote, contingent, or speculative benefits will not be assessed. The whole subject-matter is placed under the immediate direction and supervision of the court, and we are not to suppose that any benefits will be allowed to be assessed that are not justified by settled principles of law. There is, therefore, no reasonable ground for the apprehension of injustice by reason of the uncertainty of the benefits that may be assessed under section 11 ; nor is there any reasonable ground for apprehension of injury occasioned by delay after condemnation had and judgment thereon. Section 18 of the statute furnishes ample guard and protection against any such injury occasioned by delay in the payment of the money awarded on condemnation ; and it is fair and reasonable to presume that the commissioners will proceed in opening and making the streets and avenues without unnecessary delay, after condemnation and payment for the right of way ; especially as they are forbidden, after the recording of the map of the plan of extension, " to improve, repair, or assume any responsibility in regard to any abandoned highway within the area covered by such map." And the act, by express terms in its second section, provides that, " in order to enable the commissioners to proceed *speedily and efficiently* to carry out the purposes of this act," they are authorized to appoint commissioners to supervise and direct the execution of the work. No unnecessary delay, therefore, is contemplated, and none should be presumed as likely to occur.

2. With respect to the fifteenth section of the act, different considerations are presented. The power of assessment for benefits attempted to be delegated by that section, in order to raise the one-half of the cost of the improvement, can only be exercised by virtue of the taxing power of the Government. The authority attempted to be given by the act is, that of the amount awarded by the court as damages for each highway or reservation, or part thereof, condemned and established under this act, there shall be one-half assessed against the land benefited thereby, and the other half shall be charged up to the revenues of the District of Columbia. This power of assessment for benefits, as given in this section of the act, is without territorial limitation, and may extend into other subdivisions, and the same lots or parcels of land may be subject to assessments by other juries thereafter called upon to make assessments upon land benefited. This would be contrary to justice, and would contravene an established principle of such local assessments. Such assessments should be so apportioned and levied as to produce uniformity in the burdens imposed thereby, within the taxing district, as nearly as possible. Judge Cooley, stating the result of all the well-considered cases upon the subject, says, that, "as to all taxation apportioned upon property, there must be taxing districts, and within these districts the rule of absolute uniformity must be applicable. A State tax is to be apportioned through the State, a county tax through the county, a city tax through the city; while in the case of a local improvement benefiting in a special and peculiar manner some portion of the State, or of the county or city, it is competent to arrange a special taxing district, within which the expense shall be apportioned." Const. Lim. 610. Again, the author says: "Even within this district the assessment is sometimes made by some other standard than that of value; and it is evident that if it be just to create the taxing district with reference to special benefits, it would be equally just and proper to make the taxation within the district

have reference to the benefit each parcel of property receives, rather than to its relative value. The opening or paving of a street may increase the value of the property upon or near it; and it may be just that all such property should contribute to the expense of the improvement; but it by no means follows that each parcel of the property will receive from the improvement a benefit in proportion to the previous value. One lot upon the street may be greatly increased in value, another at a little distance may be but slightly benefited; and if no constitutional provision interferes, there is consequently abundant reason why the tax levied within the taxing district should have reference, not to value, but to benefit." Id. 612.

The question of special benefit, and the property to which it extends, is clearly one of fact. And being a question of fact, the legislature may commit to commissioners the ascertainment of the sum to be assessed, and the district within which the assessments shall be made. But it is not bound so to delegate the power to determine these questions; it may determine both of such questions for itself, and when so determined the decision is final and conclusive. *Spencer v. Merchant,* 125 U. S. 345.

In this case, while the act, by its fifteenth section, provides that one-half of the amount awarded as damages for each highway or reservation or part thereof, condemned and established, shall be assessed against the land benefited thereby, it entirely fails to define or prescribe the district or territory within which the benefits may be assessed. Whether confined to the particular subdivision in which the highway or street may be condemned and established, or whether such benefits may be assessed against land beyond the limits of such subdivision along the line of such improvement, as extended into or through adjoining subdivisions, the act is entirely silent. Nor is there any provision conferring authority upon commissioners, or upon the court, to define such taxing district. And the act wholly fails to provide how the assessment shall be appor-

tioned—whether with reference to the existing value of the land, or to the amount of benefit only that may be derived from the improvement when made. The omission of these essential provisions renders the power of assessment, under this fifteenth section, impossible of execution, according to settled principles of law. The provision authorizing the assessments under the fifteenth section, is entirely too indefinite and uncertain to furnish a reasonable and safe criterion for assessing the one-half of the award of damages against the property supposed to be benefited. This omission or defect in the act, however, does not render invalid the entire act. The particular provision is nugatory for the want of certainty; but all the other provisions of the act are valid, according to my opinion. The defect in the act can easily be removed, by an amendatory act of Congress.

By the order of the court below dismissing the proceedings, it is recited, that, upon argument, "it appearing to the court that the act of Congress under which this proceeding is instituted, is unconstitutional and void, for the reasons stated in the opinion of this court filed, it is ordered and adjudged by the court, that the verdict rendered herein by the jury be and the same is set aside, and that the petition herein is hereby dismissed."

This order, in my opinion, should be reversed, and the cause be remanded to the court below, so that the verdict of the jury may be set aside, and that the appellants be allowed to move for such other and further proceedings in the premises as they may be advised to be proper.